IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT SINGLETON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:11-cv-2332-BN |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

# **MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Singleton seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed and remanded in part and affirmed in part.

## **Background**

Plaintiff alleges that he is disabled due to discogenic and degenerative disorders of the back. After his applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on July 30, 2010. At the time of the hearing, Plaintiff was 54 years old. He is a high school graduate and has past work experience as an automotive mechanic, diesel mechanic, wrecker operator, tire repairer, and retail store manager. Plaintiff has not engaged in substantial gainful activity since October 4, 2007.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff

suffered from discogenic and degenerative disorders of the back, the ALJ concluded that those impairments' severity did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform limited light work – specifically, that Plaintiff has the residual functional capacity to lift/carry ten pounds frequently, twenty pounds occasionally, sit four hours in an eight hour workday, stand four hours in an eight hour workday, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, with no climbing of ladders, ropes, or scaffolds – but that Plaintiff could not return to his past relevant employment. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as assembly worker, cashier II, and mail clerk, which are jobs that exist in significant numbers in the national economy. Given his age, education, and exertional capacity for light work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff sought review by the Appeals Council, which denied his request.

Plaintiff then filed this action in federal district court. In multiple grounds for relief, Plaintiff contends that the Commissioner's decision (the "Decision") is based on legal error and lacks the required support of substantial evidence. Specifically, Plaintiff argues that the ALJ committed reversible error by: (1) failing to discuss and apply the proper weight to the treating and examining physicians' opinions; (2) improperly evaluating his credibility; and (3) failing to use Plaintiff's current age of 55 when applying the Medical-Vocational Guidelines.

The Court determines that the hearing decision must be reversed and that this case will be remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued

period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from

doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where Plaintiff shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *Jones v. Astrue*,

691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *Audler*, 501 F.3d at 448.

## Analysis

*The Treating and Examining Physicians' Opinions*

Plaintiff first contends that the ALJ failed to discuss and apply the proper weight to the treating and examining physicians' opinions. *See* Dkt. No. 19-1 at 9-12.

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id.* (internal quotations omitted). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Id.* (internal quotations omitted). However, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Social Security Administration ("SSA") Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it

gives the claimant's] treating source's opinion" and list factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). Specifically, this regulation requires consideration of:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(c).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. However, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(d) factors when declining to give controlling weight to a treating physician. *Id.* at 466-67.

In this case, the ALJ was provided with several competing opinions from examining physicians, including a consultive examination report from Dr. Frank Kromelis, MD on May 5, 2009, *see* Administrative Record [Dkt. No. 17] at 201-02; a Physical Residual Function Capacity Questionnaire from Dr. William McHenry, M.D., Plaintiff's primary physician, dated January 8, 2010, *see id.* at 258-260, as well as other medical treatment records; and an assessment and medical source statement from Dr. Robert A. Goldberg, M.D., dated May 5, 2010, *see id.* at 264-72. The ALJ was also provided with a Physical Residual Functional Capacity Assessment from Dr. John Durfor, M.D., dated May 26, 2009, *see id.* at 217-24, and a Case Assessment Form from Dr. James Wright, M.D., dated August 11, 2009, affirming Dr. Durfor's assessment, *see id.* at 230. Neither of these assessments reflect that Plaintiff was examined by the opining doctor.

Each of the examining physicians' opinions differs. Dr. Kromelis did not opine specifically as to Plaintiff's exertional and functional capabilities but concluded that Plaintiff suffered from "low back pain with right S1 radicular symptoms" and "mild loss of disc space." *Id.* at 201-02. Dr. Goldberg, an orthopedic specialist who performed his examination at the ALJ's request after the administrative hearing, opined that, in an eight hour workday, Plaintiff could sit for a total of five hours, stand for a total of three hours, and walk for a total of three hours, with certain other limitations – specifically, that, at any time without interruption, Plaintiff could sit for two hours, walk for one hour, and stand for one hour. *See id.* at 268. Dr. McHenry, Plaintiff's primary treating

8

physician, determined that, in an eight hour workday, Plaintiff could sit for two hours, stand/walk for two hours, and lie down/recline for four hours, with the flexibility to change positions frequently, as well as other limitations. *See id.* at 258-60.

The non-examining physicians, Dr. Durfor and Dr. Wright, opined that, in an eight hour workday, Plaintiff could stand and/or walk for a total of six hours and sit for a total of six hours. *See id.* at 218, 230.

In his Decision, the ALJ briefly discussed Plaintiff's historical medical visits and extensively discussed Dr. Goldberg's consultative examination. *See id.* at 14-16. The AlJ found that Plaintiff has the residual functional capacity to lift/carry ten pounds frequently, twenty pounds occasionally, sit four hours in an eight hour day, stand four hours in an eight hour workday, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, with no climbing of ladders, ropes, or scaffolds. In making the residual functional capacity finding, the ALJ stated:

> The undersigned must consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitation. Any difference between the medical consultants' functional assessment and the assessment herein are due in part to new evidence and testimony. However, in spite of the differing functional analyses, the undersigned concurs with the medical consultants that the claimant is not "disabled."

*Id.* at 17. The ALJ then discussed Plaintiff's daily activities and stated that, "[w]hile it is noted that the claimant has a history of back pain, there is minimal evidence to substantiate this as debilitating." *Id.*

However, the ALJ failed to discuss Dr. McHenry's Physical Residual Function Capacity Questionnaire, which is a medical source statement. *See* Social Security Regulation ("SSR") 96-5p, 1996 WL 374183 (S.S.A. July 2, 1996); *Peal v. Comm'r of Soc. Sec. Admin.*, 3:10-cv-0176-BF, 2011 WL 942781, at *9 (N.D. Tex. Mar. 18, 2011). The Court rejects Defendant's contention that the questionnaire concerns an issue reserved for the Commissioner and is therefore not entitled to special significance. Dkt. No. 21-1 at 5. SSR 96-5p explains that a medical source statement is a "medical opinion ... about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." 1996 WL 374183, at *2. These statements are opinions based on the medical sources' personal knowledge of the individual. *Id.* The questionnaire falls into this category. *See Peal*, 2011 WL 942781, at *9.

Medical source statements submitted by treating sources are opinions entitled to special significance and may be entitled to controlling weight. *Peal*, 2011 WL 942781, at *9. The ALJ also failed to explain the weight he gave to the opinion of Dr. Goldberg, a specialist who performed the most recent examination of Plaintiff – although the Decision does appear to give some weight to Dr. Goldberg's opinion. It is impossible to tell from the Decision which opinions the ALJ considered, how the ALJ weighed the various medical opinions, and why he assigned them a particular weight.

Because there were several opinions from examining physicians, it was not strictly necessary for the ALJ to set forth his analysis concerning the Section

404.1527(d) factors if he declined to give weight to Dr. McHenry's medical source statement. *See Qualls*, 339 F. App'x at 466-67. However, it appears from the Decision that the ALJ may have given more weight to the non-examining, non-treating physicians than to Dr. McHenry and Dr. Goldberg. The Court determines that the ALJ should have considered Dr. McHenry's medical source statement and explained the weight he gave to Dr. McHenry's and Dr. Golberg's medical source statements and that failure to do so was error.

Defendant contends that, even if error occurred, the error was harmless because, if the ALJ had discussed Dr. McHenry's opinion, he would not have given it great weight. *See* Dkt. No. 21-1 at 6. The Court is unable to say what the ALJ would have done. The opinions expressed in Dr. McHenry's medical source statement, and to a lesser degree Dr. Goldberg's medical source statement, included significant limitations beyond those that the ALJ recognized in determining both Plaintiff's residual function capacity and his ability to engage in any form of substantial gainful activity. The ALJ posed to the vocational expert no hypotheticals that addressed Dr. McHenry's or Dr. Goldberg's opinions concerning Plaintiff's residual functional capacity. Had the ALJ given proper consideration to the treating and examining physicians' records and assessment of Plaintiff's ability to engage in work-related activities, the ALJ might have reached a different decision as to disability. This is especially true in light of the fact that the burden lies with the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan*, 38 F.3d at 236; *see also Myers v. Apfel*, 238 F.3d 617, 621-

22 (5th Cir. 2001) (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it); *Newton*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider each of the Section 404.1527(d) factors before declining to give weight to the opinions of the claimant's treating specialist); *Harris v. Astrue*, No. 3:11-cv-1089-M, 2012 WL 4442303, *15 (N.D. Tex. Sept. 7, 2012), *rec. adopted*, 2012 WL 4458405 (N.D. Tex. Sept. 26, 2012).

Therefore, the ALJ's failure to consider Dr. McHenry's questionnaire and explain the weight given to Dr. McHenry's and Dr. Goldberg's opinions was prejudicial error, and reversal and remand is required.

*The ALJ's Credibility Findings*

Plaintiff next contends that the ALJ's credibility findings were not supported by substantial evidence. In making a credibility determination, the ALJ must consider the objective medical evidence, as well as other factors, including:

    (1) the individual's daily activities;

    (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

    (3) factors that precipitate and aggravate the symptoms;

    (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

    (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

>> (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
>
> (7) any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); *Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir. 2008) (discussing factors). However, "[t]he ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Giles v. Astrue*, 433 F. App'x 241, 249 n.30 (5th Cir. 2011).

In this case, the ALJ determined that Plaintiff was not credible to the extent his testimony was inconsistent with the ALJ's Decision. *See* Administrative Record [Dkt. No. 17] at 17. The ALJ stated, "[w]hile it is noted that the claimant has a history of back pain, there is minimal evidence to substantiate this as debilitating." *Id.* The ALJ further based his determination on Plaintiff's testimony concerning his ability to perform daily "work" activities, including Plaintiff's ability to care for the animals on his farm and drive a John Deere Gator around his property. *Id.*

Although typically the ALJ's analysis would have been proper, because the ALJ failed to consider a medical source statement from Plaintiff's treating physician and failed to weigh the medical source statement from Dr. Goldberg, a specialist, the Court cannot conclude that the ALJ's credibility determination was supported by substantial evidence, as it was not considered in light of the objective medical evidence. On

remand, the Commissioner should reconsider its credibility determination after weighing Dr. Goldberg's and Dr. McHenry's medical source statements.

*The Medical-Vocational Guidelines*

Finally, Plaintiff contends that the Medical-Vocational Guidelines direct a finding of disability from Plaintiff's 55th birthday and asks this court to reverse the Decision and award benefits to Plaintiff from that date.

At the fifth step of the sequential evaluation process, the ALJ considers the plaintiff's age in combination with his residual functional capacity, education, and work experience to determine whether the plaintiff is capable of adjusting to and performing work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1563(a) (2010); *Flores v. Astrue*, No. 5:09-cv-214-BG, 2010 WL 3858173, at *2 (N.D. Tex. Aug. 30, 2010), *rec. adopted*, 2010 WL 3856435 (N.D. Tex. Oct. 4, 2010). The ALJ may consult the Medical-Vocational Guidelines (the "Grid Rules") to determine whether, given the plaintiff's vocational characteristics, work exists in the national economy that the claimant can perform. *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983). Located in the Commissioner's regulations at appendix 2 of part 404, the Grid Rules consist of rules that direct a finding of disability when the plaintiff's residual functional capacity, age, education, and previous work experience correspond to the job requirements under a particular rule. *See* 20 C.F.R., pt. 404, subpart P., app. 2.

Plaintiff was 54 at the time of the hearing, which means that he was an individual "closely approaching advanced age" for purposes of determining disability. Under the Grid Rules, Plaintiff was not disabled at the time of the hearing. *See* Medical-Vocational Rule 202.14. Plaintiff turned 55 less than one month after the Decision, at which point he became a person of "advanced age" for purposes of determining disability. *See* 20 C.F.R. § 416.963(e). A person of advanced age with Plaintiff's residual functional capacity, age, education, and previous work experience is considered disabled under the Grid Rules. *See* Medical-Vocational Rule 202.06. Plaintiff contends that, because his age at the time of the Decision constituted a borderline situation, the ALJ should have applied Grid Rule 202.06 and found him disabled.

Plaintiff seems to imply that this Court can award him benefits "from age fifty-five." Dkt. No. 19-1 at 16. However, Plaintiff's current age is of no moment, because the ALJ could only consider Plaintiff's age up to the time of the Decision. *See Florent v. Astrue*, No. 09-5512, 2010 WL 2977617, at *11 (E.D. La. June 17, 2010), *rec. adopted*, 2010 WL 2978224 (E.D. La. Jul. 20, 2010). But Plaintiff is correct that the ALJ must not mechanically apply the age categories in the Grid Rules to a borderline situation. *See* 20 C.F.R. § 404.1563(b); *Flores*, 2010 WL 3858173, at 3. Because the term "borderline" is not specifically defined, the Fifth Circuit has observed that the Commissioner is vested with considerable discretion in determining whether such a situation is present. *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988). As a general rule, a person who is within six months of the next higher age category is

considered to be in a borderline situation. *Florent*, 2010 WL 2977617, at *11 n.5. Plaintiff is therefore in a borderline situation.

The decision to place someone whose age approaches another category in that category is within the ALJ's discretionary, and the ALJ's decision is accorded considerable deference. *See Fosha v. Barnhart*, 372 F. Supp. 2d 948, 957 (S.D. Tex. 2005); *see also Stanridge-Salazar v. Massanari*, No. 00-50806, 254 F.3d 70, 2001 WL 502506, at *1 (5th Cir. Apr. 24, 2001) ("Other than the fact that Stanridge was approximately six months from her 55th birthday when the ALJ's decisions were issued (which would change her status from a person 'approaching advance age' to a person of 'advanced age'), she presents nothing to support her argument that the ALJ erred in finding her to be a person 'approaching advanced age.'"). Although Section 404.1563(b) mandates that the issue must be "considered" such that the record contains enough of an explanation fo the ALJ's overall disability adjudication to enable reviewing courts to determine whether the decision is supported by substantial evidence, there is no requirement that an ALJ explain in his written decision why he did not use an older age category. *See Stout v. Astrue*, No. 10-4466, 2012 WL 1020179, at *10 (E.D. La. Feb. 22, 2012) *rec. adopted* 2012 WL 1020179 (E.D. La. Mar. 26, 2012) (citing *Bowie v. Comm. of Soc. Sec.*, 539 F.3d 395, 400-01 (5th Cir. 2008)). The ALJ's reliance on the testimony of a vocational expert in assessing the overall impact of all of the factors of a plaintiff's case will typically suffice. *See Stout*, 2012 WL 1020179, at *10 (collecting cases).

In this case, the ALJ specifically informed the vocational expert that Plaintiff was 54, *see* Administrative Record [Dkt. No. 17] at 43, and asked him to consider Plaintiff's age when considering whether there were jobs Plaintiff could perform that exist in significant number in the national economy, *see id.* at 44. As such, the ALJ's decision not to place Plaintiff in the "advanced age" category is supported by substantial evidence, and this Court must not disturb it. *See Fosha*, 372 F. Supp. 2d at 957.

## Conclusion

The hearing decision is reversed in part and affirmed in part, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

DATED: February 7, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE